**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| MILTON E. MYERS and JOSEPH MARCHIONE | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 05-5855 |
| | : | |
| DELAWARE COUNTY COMMUNITY COLLEGE and DELAWARE COUNTY COMMUNITY COLLEGE ASSOCIATION OF HIGHER EDUCATION | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                   **MARCH  9, 2006**

Plaintiffs Milton Myers and Joseph Marchione have filed this suit to recover damages for alleged violations of the federal Age Discrimination in Employment Act ("ADEA").  Presently before this Court are the Motions for Summary Judgment filed by Defendants Delaware County Community College and Delaware County Community College Association of Higher Education. For the following reasons, the  Defendants' Motions for Summary Judgment are granted.

**I.      BACKGROUND**

On January 7, 2005, Milton Myers and Joseph Marchione voluntarily retired from their positions at Delaware County Community College ("College") where they had worked as tenured mathematics professors for 35 years.  Myers and Marchione were 62 and 66 years of age when they retired, and were fully vested in their pension funds.  In addition to their pension benefits, these men received supplemental retirement incentive benefits from the College.  These

incentives were conferred in accordance with a voluntary early retirement incentive plan ("VERIP") contained in the collective bargaining agreement governing Plaintiffs' employment. Myers and Marchione each received 2 annual payments of 20% of their previous base salaries and 2 years of medical insurance coverage from the College in exchange for electing to retire after 35 years of service. These incentives form the basis of Plaintiffs' complaint.

The Delaware County Community College Association of Higher Education (the "Association") was the bargaining unit for the tenured faculty members of the College. The Association was responsible for negotiating the tenured faculty's collective employment contract with the College. They negotiated two contracts relevant to this Memorandum. The first was enacted in 1996 and governed employment from 1996—2001. This contract contained a VERIP plan that based eligibility on an employee's age. The second contract was ratified in 2001 by the members of the Association and is presently in effect. It contains a VERIP provision that bases eligibility on an employee's years of service. Plaintiffs believe this plan violates the ADEA. A comparison of the two plans is necessary, and therefore, the VERIP provision contained in the first contract will be referred to as the 1996 VERIP and the provision in the second contract will be referred to as the 2001 VERIP.

The 1996 VERIP contained minimum and maximum ages for eligibility. A tenured faculty member had to be at least 58 years old and have worked full-time at the College for 10 years before he was eligible to elect early retirement. Once an employee was eligible, he could elect early retirement up to his 64th birthday. After that point, he was precluded from electing early retirement because of his age. The plan offered employees who elected early retirement benefits in the form of lump sum cash payments and medical insurance coverage. The lump sum

cash incentive payment was equal to 20% of the employee's last base salary before retiring, and was paid annually for a maximum of five years.  However, no employee was guaranteed five payments.  The payments ceased once the employee reached his 65th birthday, regardless of how many he had received.  The College also provided medical insurance under the 1996 VERIP.  Coverage was provided annually until the employee reached his 65th birthday as well.

In contrast, eligibility in the 2001 VERIP is determined by an employee's years of service at the College.  An employee becomes eligible for early retirement when he has amassed 30 years of service.  Once an employee amasses the required years of service, he can elect early retirement regardless of his age.  Employees are no longer barred from electing early retirement after they turn 64 years old either.  These changes were made to the 1996 VERIP in an effort to make the VERIP comply with the ADEA.  The Association and the College believed that the inclusion of the minimum and maximum ages for eligibility in the 1996 VERIP was in violation of the prohibitions on age discrimination.  Consequently, they removed all references to age in the language defining the plan.  Eligibility is now based exclusively on an employee's years of service.  The College and the Association chose the requirement of 30 years after reviewing similar plans offered by other institutions.  Plaintiff Marchione was a member of the negotiating committee for the 2001 contract which contained the amended early retirement provision.

Employees electing the 2001 VERIP still receive cash incentives and medical insurance coverage in exchange for retiring early.  However, incentives are now awarded in accordance with a schedule which assigns these benefits in relation to the number of years that an employee has worked.  If you retire after working at the College for 30 years, you get 5 annual payments of 20% of your last base salary and 7 years of health insurance coverage provided by the College.

These incentives are similar to the ones offered under the 1996 VERIP and are the maximum amounts available under the 2001 plan. Early retirement incentives decrease for employees who choose to continue working after amassing 30 years of service.

Employees who retire after 31 years of service receive 5 annual payments and 6 years of health insurance. Choosing to retire after 32 years of service nets you 5 annual payments and 5 years of health insurance. Electing the plan after amassing 33 years of service gives you 4 annual payments and 4 years of health insurance. An employee who retires with 34 years of service then you is entitled to receive 3 annual payments and 3 years of health insurance. Plaintiffs retired after working for 35 years at the College and were given 2 annual payments and 2 years of health insurance coverage in accordance with the schedule. Finally, an employee who chooses to retire after 36 years of service gets 1 annual payment and 1 year of health insurance coverage. The College does not offer incentives to induce early retirement to faculty members who choose to work longer than 36 years.

While the Association seemed primarily concerned that the 2001 VERIP complied with the ADEA, they also wanted to make sure that the benefits of this plan were available to the majority of their members. Changes in the demographics of the faculty made this difficult to accomplish. New faculty members now tend to be older individuals. Previously, new professors were in their 20s when they began working at the College, but now they tended to be in their 30s, 40s and 50s. These new faculty members were older because the College was seeking people with expertise in business or industry. Consequently, many of these individuals had worked for considerable periods before coming to the College.

The Association was concerned that the 2001 VERIP would be unappealing to these new

4

faculty members because of its effect on them.  The plan was designed around the assumption that faculty members joined the College in their 20s.  After working for 30 years, these people would be in their 50s which is when you typically begin to think about retiring.  The changing demographics made this assumption false, as after 30 years of service these newer faculty members would be in their 60s, 70s, and 80s.  The Association was concerned that these people would not benefit from this provision.  For example, one of the newly hired professors was 57 years old and had worked previously.  He would not become eligible until he was 87 years old, and thus probably would never utilize the plan.  The Association wanted the VERIP to be beneficial to all members.  Those members had to ratify the contract.  Therefore, they included a credited service provision in the 2001 VERIP in an attempt to mitigate this situation.

The credited service provision allows tenured faculty member to amass the 30 years of service needed to elect early retirement through a combination of years working at the College and years worked outside of the College.  Faculty members who worked in other educational endeavors are granted one year of credited service for every year that they worked, up to a maximum of twelve years.  For example, a former high school teacher can get 10 years credit if she worked at the high school for ten years.  Employees who worked in non-education endeavors receive one year of credited service for every two years that they worked, also up to a maximum of twelve years of credited service.  The 57 year old employee mentioned above worked for the FBI.  Assuming that he worked there for 20 years, he will get 10 years credit towards his 30 year requirement.  The credited service provision contains no reference employee age.  Plaintiffs refer to the clause that governs credit for non-education work as the "two for one" clause.

Ultimately, the Association's membership, including Plaintiffs, ratified the contract

which included the years of service requirement and the credited service provision at issue. Since the 2001 VERIP has been available to the tenured professors at the College, fourteen people have voluntarily retired and received benefits pursuant to its terms.  Those individuals are as follows:

Plaintiff Marchione retired on 1/7/2005 after working for 35 years.  He was 66 years old.

Plaintiff Myers retired on 1/7/2005 after working for 35 years.  He was 62 years old.

Imre Szalai retired on 12/20/2002 after working for 34.5 years.  He was 66 years old.

Frank Mulvaney retired on 6/30/2002 after working for 34 years.  He was 67 years old.

James Roman retired on 8/24/2002 after working for 34 years.  He was 69 years old.

Peg Schlairet retired on 8/31/2005 after working for 34 years.  She was 65 years old.

Sam Finklestein retired on 12/20/2002 after working for 33.5 years.  He was 64 years old.

Reuben Aronovitz retired on 8/26/2003 after working for 33 years.  He was 75 years old.

Jane Malloy retired on 8/26/2002 after working for 30 years.  She was 67 years old.

Jack McCormack retired on 8/26/2002 after working for 30 years.  He was 67 years old.

Joseph Trevelino retired on 8/26/2002 after working for 30 years.  He was 64 years old.

King Perry retired in 5/2005 after working for 30 years.  He was 59 years old.

Joseph McGinn was 56 years old when he retired.  (years of service not stated)

Miriam Sperber was 59 years old when she retired.  (years of service not stated)

All of these people received incentives based on their years of service.  Few statistics have been presented showing who among these individuals received credited service.  Plaintiffs stated at their depositions that they had worked at the College for the duration of their careers.  King Perry said at his deposition that he had worked at a public school prior to working at the College.  He had worked at the College for 25 years upon his retirement, and was granted 5 years of credited service on a one for one basis for his prior public school employment.

Some additional relevant facts about the Plaintiffs are necessary:  As stated before, the

Plaintiffs elected to retire under the 2001 VERIP in 2005, after working at the College for 35 years.  Joseph Marchione was 66 years old and Milton Myers was 62 years old.  Plaintiffs had been eligible for early retirement under the 2001 VERIP as soon as the plan was put into place in September, 2001.  Plaintiffs had worked at the College for approximately 31 years when the 2001 VERIP became effective.  Due to their years of service, if Plaintiffs had elected early retirement as soon as the 2001 VERIP was effective, they would have received benefits based on 31 years of service.  Plaintiffs were not able to elect early retirement with only 30 years of service.  No special accommodation was made to remove any of Plaintiffs years of service so that they could retire as though they had only worked for 30 years.

Neither Plaintiff has stated that he had any intention to retire in or before 2001.  Plaintiffs were eligible for early retirement under the 1996 VERIP, which remained in effect until the 2001 VERIP replaced it, but neither man chose to retire under that plan either.  Milton Myers said in his deposition that he did not intend to retire before he turned 60 years old.  He turned 60 years old in 2003.  Joseph Marchione said that his intention was to retire only when the value of his pension reached $800,000.  His pension was worth approximately $831,000 at the end of 2004.  Plaintiffs voluntarily chose to continue working at the College where they received full salaries and medical insurance coverage until January 7, 2005.

Plaintiffs allege that basing eligibility on years of service eligibility is impermissible age discrimination because the choice of 30 years was merely a proxy for the age requirements in the 1996 VERIP.  Plaintiffs also claim that even if the years of service requirement is lawful, it has worked to exclude older faculty members because individuals hired before 1970 could not retire with only 30 years of service under the 2001 VERIP as they had passed that threshold before the

plan was enacted.  Plaintiffs have shown that the excluded faculty were all hired prior to 1970, and all happened to be older than 60 years of age when they retired.  They believe this impact demonstrates age discrimination.

Plaintiffs also claim that Defendants enacted the "two for one" clause in the credited service provision for the express purpose of helping faculty members hired after 1970 reach the minimum 30 years of service faster.  Plaintiffs have alleged that although the credited service provision is neutral on its face, its effect is to discriminate against faculty members older than 60. In the alternative, Plaintiffs argue that even these two provisions are lawful, Defendants were required to incorporate a grandfather provision into the 2001 VERIP, and their failure to do so is in violation of the ADEA.

## II.   <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 56(c) states that summary judgment is proper "if there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  <u>See</u> <u>also</u> <u>Hines v. Consol. Rail Corp.</u>, 926 F.2d 262, 267 (3d Cir. 1991).  The Court must ask "whether the evidence presents a sufficient disagreement to require submission to the jury or whether . . . one party must prevail as a matter of law."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986).  The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex</u>, 477 U.S. at 322.  The non-moving party

must go beyond the allegations set forth in its pleadings and counter with evidence showing that there is a genuine factual dispute requiring a trial.  Fed. R. Civ. P. 56(e); see Big Apple BMW, Inc. v. BMW of N. Am. Inc., 974 F.2d 1358, 1362-63 (3d Cir. 1992).  A genuine factual dispute exists when "a reasonable jury could return a verdict in favor of the non-moving party."  Embrico v. U.S. Steel Corp., 404 F. Supp. 2d 802, 817 (E.D. Pa. 2005).  When a party fails to establish an element of their case, summary judgment must be granted.  Celotex, 477 U.S. at 322.

## III.   DISCUSSION

Plaintiffs have raised their age discrimination claims under disparate treatment and disparate impact theories of discrimination.  A disparate treatment argument requires that the Plaintiffs show "purposeful or intentional discrimination" by the Defendants, but the disparate impact argument does not.  Massarsky v. Gen. Motors Corp., 706 F.2d 111, 117 (1983).  Both theories are available under the ADEA.  Smith v. City of Jackson, Miss., 544 U.S. 228, 240 (2005); Hazen Paper Co. v. Biggins, 507 U.S. 604, 609 (1993); see also Lorillard v. Pons, 434 U.S. 575, 585 (1978).

Discriminatory animus can be proven through circumstantial evidence.  The courts apply a burden shifting framework, articulated by the Supreme Court in McDonnell Douglas Corp. v. Green,  411 U.S. 792 (1973), when indirect evidence is proffered.  First, Plaintiffs must establish the prima facie elements of their discrimination claim.  Id. at 802.  Once Plaintiffs establish their prima facie case, a rebuttable presumption of discriminatory intent is created and the burden of production shifts to the Defendants to justify its actions.  Embrico v. U.S. Steel Corp., 404 F. Supp. 2d 802, 818 (E.D. Pa. 2005).  If Defendants carry that burden, Plaintiffs will have another opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by

9

the Defendant were just a pretext for discrimination.  Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).  Plaintiffs bear the ultimate burden of establishing age discrimination.  Massarsky, 706 F.2d at 117.  Since Plaintiffs cannot establish their prima facie case under either theory, no rebuttable presumption will be created.

The Age Discrimination in Employment Act makes it generally unlawful for employers "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a).  The protections of the ADEA are limited to individuals at least 40 years of age.  29 U.S.C. § 631(a).  Congress' goals in enacting this statute were to prohibit arbitrary age discrimination in employment, and to help employers and workers find ways of meeting problems arising from the impact of age on employment.  29 U.S.C. § 621(b).

The broad coverage of this general prohibition is limited by section (f) of the statute which states that "[i]t shall not be unlawful for an employer . . . to take any action otherwise prohibited . . . where the differentiation is based on reasonable factors other than age . . . ."  29 U.S.C. § 623(f)(1).  This provision precludes liability in cases where a facially neutral plan had an impact on a protected group "if the adverse impact was attributable to a nonage factor that was 'reasonable.'"  Smith, 544 U.S. at 239.  The statutory text also states that it shall not be unlawful for an employer to take an otherwise prohibited action "to observe the terms of a bona fide employee benefit plan – that is a voluntary early retirement incentive plan consistent with the relevant purpose or purposes of [the ADEA]."  29 U.S.C. § 623(f)(2)(B)(ii).  This provision allows employers to implement early retirement incentive plans with age-based distinctions so

long as those plans are truly voluntary and consistent with the purposes of the ADEA.

Colleges and universities are afforded additional exceptions to the prohibitions of the ADEA.  Under the Higher Education Amendments of 1998, it is lawful for colleges and universities to offer tenured employees "supplemental benefits upon voluntary retirement that are reduced or eliminated on the basis of age, so long as these plans allow:

> any employee who attains the minimum age and satisfies all non-age-based conditions for receiving a benefit under the plan . . . an opportunity lasting not less than 180 days to elect to retire and to receive the maximum benefit that could then be elected by a younger but otherwise similarly situated employee, and the plan does not require retirement to occur sooner than 180 days after such election.

29 U.S.C. § 623(m)(3).  This subsection is referred to as the ADEA's grandfather provision.  It requires employers who create new age based VERIP to give employees who are excluded at the time the age based plan is implemented an opportunity to elect the plan.  See Equal Employment Opportunity Commission Compliance Manual, Section 3, Employee Benefits, *available at* http://www.eeoc.gov/policy/compliance.html (last visited March 1, 2007).

A plaintiff asserting an age discrimination claim must generally show three things: that he is within the protected class, that he was subjected to an adverse employment action, and that there is a causal connection between the adverse employment action and his age.  See Barbara T. Lindemann & David D. Kadue, Age Discrimination in Employment Law 24 (2003).  Plaintiffs have shown that they are within the ADEA protected class, as they are individuals at least 40 years of age.  29 U.S.C. § 631(a).  Plaintiffs have also shown that they were precluded from receiving maximum early retirement incentive benefits because they had amassed 31 years of service as of the date the 2001 VERIP became effective.  Whether Plaintiffs have established a causal connection between this adverse action and their age is the subject of this memorandum.

11

### A.    Disparate treatment

#### 1.    Years of service requirement

Plaintiffs have not established that Defendants chose the eligibility requirement of 30 years of service in the 2001 VERIP as a means of instituting age requirements for the plan. Establishing the prima facie case requires that Plaintiffs "show that [their] employer applied an expressly age-based standard in its treatment of [them or the protected class]." Woodfield v. Heckler, 591 F. Supp. 1390, 1397 (E.D. Pa. 1984); see also Auerbach v. Bd. of Educ., 136 F.3d 104, 109 (2d Cir. 1998).  The Supreme Court has held that it is "incorrect to say that a decision based on years of service is necessarily age based," because "an employee's age is analytically distinct from his years of service."  Hazen, 507 U.S. at 611.   Liability only attaches if age, the protected trait under the ADEA, actually motivated the employer's decision.  Hazen, 507 U.S. at 610.  Thus, "there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age."  Hazen, 507 U.S. at 609.

Eligibility in the 2001 VERIP was based exclusively on an employee's years of service. The evidence does not support Plaintiffs' contention that the years of service requirement is the equivalent of a minimum age requirement.  Plaintiffs have not shown that age is a determinative factor in deciding who is eligible for early retirement under the terms of the 2001 VERIP.  Their claim that requiring a professor to amass 30 years of service really means that the professor must be 58 years old before he can opt to elect early retirement is not supported by the facts.  Plaintiffs have presented a document that shows that a member of the negotiating team scrawled some handwritten comments in which it was noted that the youngest faculty member at the time was 28 years old.  (Doc. No. 23-3).  Since a person that age will be 58 years old when she has amassed

30 years of service, Plaintiffs believe that the only reasonable inference that one can draw is that the requirement of 30 years of service is synonymous with a minimum age requirement of 58.

However, Plaintiffs' inference fails if employees begin their careers at the College when they are either 27 or 29 years of age.  An employee who starts teaching at the College when he is 27 years old will become eligible for early retirement when he is 57 years of age, assuming that he works at the College exclusively.  Alternatively, an employee who begins working at the College when she is 29 years old will become eligible for the 2001 VERIP only after she turns 59 years of age, also assuming that she only ever works at the College.  Employees who do not begin their career at the College when they are 28 years old may or may not be eligible for early retirement when they are 58 years of age.  Plaintiffs inference is correct only if an employee's employment at the College begins when they are 28 years old.

The sum of the evidence clearly refutes Plaintiffs' inference that the 30 years of service requirement is nothing more than a minimum age requirement.  Information on four professors who retired after amassing 30 years of service shows that none of them was 58 years old when they became eligible to elect early retirement under the 2001 VERIP.  Jane Malloy and Jack McCormack were 67 years old when they had amassed 30 years of service.  Joseph Trevelino was 64 years old.  King Perry was 59 years of age.  None of the people were able to retire under the 2001 VERIP when they were 58 years old.  Additionally, Joseph McGinn was able to retire when he was only 56 years old.  Thus, the evidence shows that individuals become eligible to elect early retirement under the 2001 VERIP independently of their age.

The corollary to Plaintiffs' above argument is the contention that ceasing early retirement eligibility after a professor amasses 36 years of service is the equivalent of denying an employee

the opportunity to elect early retirement after their 64th birthday, which is what occurred in the 1996 VERIP. This inference also fails for similar reasons. The 1996 VERIP had a maximum age beyond which an employee was no longer eligible for early retirement. The 2001 VERIP contains no such prohibition. An employee is eligible for early retirement until they amass 36 years of service, regardless of their age. The evidence does not show that individuals older than 64 years old cannot elect early retirement under the 2001 VERIP. Quite the contrary, the facts show that many individuals have elected early retirement after turning 64 years old.

Plaintiff Joseph Marchione retired when he was 66 years old. James Roman was 69 years old when he retired and he received incentive benefits. Reuben Aronovitz retired when he was 75 years old. At the time he retired he had amassed 33 years of service. This means that he could have worked for 3 more years and would still have been able to elect the 2001 VERIP. At that point he would have been 78 years old. Frank Mulvaney and Jane Malloy were both 67 years old when they retired pursuant to the 2001 VERIP. Of the fourteen people shown to have elected early retirement under the 2001 VERIP, ten of them were 64 years old or older. The facts show that eligibility is not predicated on any maximum age requirement. Plaintiffs have presented no evidence from which an inference that 30 years of service is an age requirement can be drawn. Plaintiffs have not established the prima facie element of causal connection on this point under a disparate treatment theory.

### 2.    Credited service provision

Plaintiffs have not shown that Defendants included the credited service provision in the 2001 VERIP to favor younger employees. The prima facie case is the same. Plaintiffs must "show that [their] employer applied an expressly age-based standard in its treatment of [them or

14

the protected class].”  Woodfield, 591 F. Supp. at 1397.

The evidence shows that the provision applies to all employees regardless of their age.

The credited service provision reads as follows:

> A year’s credited service as used in this section shall mean a year credited with any pension plan, from prior service, that the College is required to offer or recognize (presently that would include SERS, PSERS and TIAA/CREF).  A year’s credited service for non-educational service shall be allowed on a 2 for 1 basis.  That is, one year’s credited service shall be allowed for each two years employment in a non-educational situation as verified by Social Security, civil service or other appropriate records.  An [employee] may be credited with up to twelve (12) years service, as defined above, towards the service requirement in this section.

(Def. Ex. D, p. 27).  Under this clause any staff member can be given credit towards the 30 years of service requirement for work performed outside of the College.  Employees are allowed up to twelve years of credited service.  Nothing in the text of the provision limits its application to employees of a certain age.

Plaintiffs’ inference disregards the most important consideration.  Only faculty members who have worked in other jobs are able to receive credit for prior service.  Plaintiffs point to the fact that they were older than 60 and were unable to utilize this provision as evidence that it was based on age.  However, Plaintiffs were unable to benefit from this provision because they had no work experience outside of the College.  Plaintiffs belief that this provision only applies to faculty members who began working at the College after 1970 is unfounded as the language of the provision does not even suggest this.  The credited service provision is available to any faculty member, regardless of their age.  Plaintiffs would have been given credit for any work they performed outside of the College, if they had been employed outside of the College.

The evidence clearly shows that Defendants enacted this clause to correct a problem that

they encountered because the College was hiring more older faculty members. Testimony from Dolores Formichella, a negotiator for the 2001 VERIP, states that the clause was designed to assist these new faculty members, many of whom were older individuals. (Formichella Dep. 41.). She gave as an example a 57 year old former FBI agent who joined the faculty. Without any credited service, he needed to work at the College until he was 87 years old to be eligible under the 2001 VERIP. This situation was unacceptable to the Association, as this man had already worked for many years. The Association included the "two for one" clause to make the VERIP more useful to this type of older new employee. The provision allows employees like this to gain up to 12 years of credit for their former service. Age did not factor into the decision to establish this clause in the credited service provision.

The "two for one" clause was not enacted to grant a benefit to younger employees, it was enacted to benefit employees who had worked outside of the College and joined the faculty later in their lives. While newer employees may tend to be younger than the Plaintiffs, the credited service provision does not apply to them because of that fact. It is based exclusively on the number of years an employee has worked prior to starting at the College. The evidence does not support the inference that the credited service provision is an age-based policy. Plaintiffs have shown that credited service is granted based only on the number of years an employee has worked outside of the College. Plaintiffs have failed to establish the prima facie element of causal connection on this point under the disparate treatment theory.

### B.    Disparate impact claim

Plaintiffs have not established a causal connection between the adverse employment action that they suffered and age under a disparate impact theory of discrimination either. Their

initial burden with respect to a disparate impact claim is heavier than when disparate treatment is alleged. Massarsky, 706 F.2d at 120. Disparate impact results when "employment practices that are facially neutral in their treatment of different groups . . . in fact fall more harshly on one group than another and cannot be justified by business necessity." Hazen, 507 U.S. at 609. A plaintiff can establish disparate impact by showing that a facially neutral employment practice had a "significantly discriminatory impact" on the protected group. Massarsky, 706 F.2d at 120.

Establishing a prima facie case requires a plaintiff to first identify the specific practice(s) alleged to have created a disparate impact, and then show that this practice caused observable statistical differences. Smith, 544 U.S. at 241. The Supreme Court has consistently stressed that statistical disparities must be substantial enough to raise an inference that the disputed practice has caused the disparity. Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 995 (1988). The Plaintiffs "must show that the employer's selection process results in unfavorable treatment of a disproportionate number of members of the protected group to which [they] belong." Massarsky, 706 F.2d at 120. Ultimately, liability is precluded in disparate impact cases where a facially neutral plan had an impact on a protected group "if the adverse impact was attributable to a nonage factor that was 'reasonable.'" Smith, 544 U.S. at 239.

Plaintiffs argue that the choice of 30 years threshold for eligibility resulted in a disparate impact on tenured professors hired before 1970. On page 5 of their Memorandum in Opposition, Plaintiffs state that:

> While older members of the faculty at DCCC (like Myers and Marchione) were deprived of receiving the full benefits under the VERIP due to applicable length of service requirements (because they could never be able to retire at the 30-year length of service stage), younger faculty members (those who were hired after 1970) were not.

Plaintiffs are correct in this assertion.  While the discriminatory impact befalls a sub-group of the the protected group as Plaintiffs show, the impact is fully attributable to the fact that the affected employee's were hired before 1970.  Date of hire is a factor unrelated to age.  The age correlation that Plaintiffs allege is tenuous at best.  Defendants' choice of 30 years as the threshold is a reasonable nonage factor and thus liability is precluded under the disparate impact theory.

### 1.    Years of service requirement

Plaintiffs have not shown that the years of service requirement had a significantly discriminatory impact on the protected group as a whole, or the sub-group of employees age 60 and older which they highlight.[1]  They have shown that some tenured professors who began working at the College before 1970 were unable to ever retire with only 30 years of service, but "[a]n adverse effect on a single employee or even a few employees is not sufficient to establish disparate impact."  Massarsky, 706 F.2d at 121.  Plaintiffs evidence does not show that the employees who were precluded from retiring with only 30 years at the College, were impacted because of their age.

Plaintiffs' evidence shows only that the adverse impact the 30 years requirement had was to preclude employees hired before 1970 from retiring when they had only 30 years of service.  No significant correlation to age has been established.  In reviewing statistics, this Court "must

---

[1]The practice of using sub-groups within the protected group to establish a disparate impact claim is an unsettled question among the Courts of Appeals.  While sub-group analysis is allowed under disparate treatment claims, the question has not been decided in regards to disparate impact claims.  Case law from the Second and Eighth Circuits holds that sub-group analysis is not allowed under the ADEA.  In Lowe v. Commack Union Free Sch. Dist., 886 F.2d 1364, 1373 (2d Cir. 1989), that court held that a plaintiff in a disparate impact age discrimination case must allege that the protected group as a whole was impacted.  The court reasoned that sub-groups were not allowed because the protected group was expressly defined in the statute, and any claim of discrimination against a particular sub-group should be addressed under a disparate treatment analysis.  While this Court finds the rationale of the Second Circuit persuasive, we need not decide this question as Plaintiffs have not established disparate impact attributable to age on either the protected group or their sub-group within the class.

take into account the surrounding facts and circumstances in order to assess the usefulness of the statistical data." Embrico, 404 F. Supp. 2d at 829. Plaintiffs cite statistics that state that 100% of employees younger than 60 who elected to retire under the 2001 VERIP received full incentive benefits, while only 18% of the employees 60 years of age and older who elected early retirement received the same. Plaintiffs attribute the difference to the employee's age, but the surrounding facts suggest that this inference is inaccurate.

The disparity that Plaintiffs have observed in the allocation of incentives is attributable to the employee's date of hire for most of the individuals in Plaintiffs' sub-group. These people[2] all began teaching at the College before 1970. That explains why they were excluded. Their age is not correlated to their hire date. Additionally, their ages at retirement ranged from 62—75 years old. Plaintiffs and these six other individuals were unable to elect early retirement at 30 years of service only because they started teaching at the College on or before 1970. They inevitably amassed more than 30 years of service when the 2001 VERIP went into effect, because that occurred thirty-one years after these people began working at the College. While these people were precluded from retiring at 30 years of service, other individuals of who were the same age were not. This shows that the disparity is not a result of age discrimination, but rather comes about because of the choice of 30 years as the threshold.

---

[2] Plaintiff Marchione retired on 1/7/2005 after 35 years, was 66 years old, and came to the College in 1970.
Plaintiff Myers retired on 1/7/2005 after 35 years, was 62 years old, and came to the College in 1970.
Imre Szalai retired on 12/20/2002 after 34.5 years, was 66 years old, and came to the College in 1967.
Frank Mulvaney retired on 6/30/2002 after 34 years, was 67 years old, and came to the College in 1968.
James Roman retired on 8/24/2002 after 34 years, was 69 years old, and came to the College in 1968.
Peg Schlairet retired on 8/31/2005 after 34 years, was 65 years old, and came to the College in 1971.
Sam Finklestein retired on 12/20/2002 after 33.5 years, was 64 years old, and came to the College in 1968.
Reuben Aronovitz retired on 8/26/2003 after 33 years, was 75 years old, and came to the College in 1970.

Frank Mulvaney was unable to retire with only thirty years of service because he began working at the College before 1970.  When he chose to retire he was 67 years old.  Jane Malloy and Jack McCormack were also 67 years old when they chose to retire.  However, they elected the 2001 VERIP when they had amassed 30 years of service.  They were able to do so because they started at the College after 1970.  In that same vein, Sam Finklestein was unable to retire with only 30 years of service because he was hired before 1970.  He was 64 years old when he retired.  In contrast, Joseph Trevelino also elected early retirement when he was 64 years old, but he was able to retire at the 30 year threshold because he was not hired until after 1970.  The evidence does not support the inference that the age of an employee was responsible for their preclusion from being able to elect early retirement at the threshold 30 years of service.

The only reasonable inference that can be drawn is that the choice of 30 years of age in 2001 had a disparate impact on individuals who were hired before 1970.  Thus, the disparity is attributable to a nonage factor.  Under the test promulgated in <u>Smith</u>, this Court must look to see if that factor is reasonable.  The choice of 30 years as the threshold was made by the College and the Association after looking at other similar programs, and the facts do not support the inference that age played a role in the determination of this threshold requirement.  The choice of 30 years has not been linked to the prohibited characteristic of age.  Since the disparity is explained by reference to the 30 years requirement, liability is precluded as this is a reasonable nonage factor.

### 2. Credited service provision

Plaintiffs have not shown that the credited service provision, specifically the "two for one" clause, had a significantly discriminatory impact on the protected group as a whole, or the sub-group of employees age 60 and older which they highlight.  Plaintiffs must go beyond the

20

allegations set forth in its pleadings to show that there is a genuine factual dispute requiring a trial.  Fed. R. Civ. P. 56(e).  Plaintiffs have offered no evidence in support of the claim that the "two for one" clause allows younger faculty members to amass 30 years of service quicker than older employees.  The claim that King Perry was able to amass the required years of service by way of this clause has been dispelled through deposition testimony from King Perry himself.

The "two for one" clause does not let younger faculty members amass 30 years of service in a shorter time than older faculty members.  Plaintiffs' own example, raised in their Opposition to these Motions, demonstrates that this allegation cannot be true.  The example assumes that two individuals begin working when they are 28 years old.  One joins the faculty at the College, while the other takes a non-educational job (which is the only way that the "two for one" clause applies).  The person working at the College from the outset will amass 30 years of service after she actually works for 30 years.  At that point, she will be 58 years old.  The other person will never amass 30 years of service by the time he is 58 years old.  Assuming that the second individual works for 6 years before coming to the College, he will be 34 years old when he becomes a member of the College's faculty.  While he has already worked for 6 years, under the "two for one" clause he will only receive 3 years of credit.  The clause requires him to work two years for each credited year.  This means that this individual needs to amass 27 more years of service at the College to be eligible under the 2001 VERIP.  He will be 61 years old at that point.  An individual who uses the "two for one" clause will always be older than a comparable faculty member who only works at the College.

Plaintiffs have provided no evidence in support of their contention.  It is evident from the example that younger workers receive no special benefit.  Age is not a consideration in granting

credited service.  All individuals are treated alike.  While individuals who gain credited service through the "two for one" may end up having to work for fewer years at the College, this effect is not related to the individuals age in any way.  Ultimately, Plaintiffs have failed to establish a causal connection on this point under a disparate impact theory of discrimination because they have presented no evidence.

## III.    Grandfather provisions

Defendants were not required to include a grandfather provision in the 2001 VERIP because the plan was not based on age.  The language of 29 U.S.C. § 623(m) requires that:

> any employee who attains the minimum age and satisfies all non-age-based conditions for receiving a benefit under the plan has an opportunity lasting not less than 180 days to elect to retire and to receive the maximum benefit that could then be elected by a younger but otherwise similarly situated employee, and the plan does not require retirement to occur sooner than 180 days after such election.

Plaintiffs claim that Defendants have failed to comply with this provision of the ADEA because they did not provide Plaintiffs with the option of electing to retire under the 2001 VERIP as if they had only amassed 30 years of service.  Plaintiffs present examples from the compliance manual of the Equal Employment Opportunity Commission as support for their argument.

The compliance manual does not support Plaintiffs' argument.  The examples[3] provided

---

[3]EXAMPLE - In January of 1999, Employer T eliminates the health benefits that it had previously made available to retirees. In June of 1999, Employer T offers a new ERI under which tenured faculty who retire between the ages of 55 and 64 are provided their prior retiree health benefits. Because it simply repackages benefits previously available to these employees, Employer T's ERI is not protected by this exemption. It will be valid only if Employer T can show that it satisfies one of the other defenses to age-based ERIs.

All tenured faculty must have at least one chance to elect the benefit when they first become eligible for it. This is a "grandfathering" provision to protect tenured faculty members who are over the ages eligible for early retirement when an employer first institutes an ERI.

EXAMPLE - In January 1999, Employer T establishes an ERI that provides $20,000 to any tenured faculty member who retires between the ages of 55 and 59 and who has 10 years of service. CP, a 64 year old tenured faculty member with the required years of service, alleges age discrimination.

CP must be given the opportunity to take early retirement despite his age. CP must be given at least 180 days to choose to retire and a further 180 days after the election actually to retire.

show that colleges and universities that institute voluntary early retirement incentive plans with age based requirements are required to offer all tenured faculty one opportunity to elect the plan when it is first enacted.  Common to these examples is the fact that specific age requirements are included, which are lawful under 29 U.S.C. § 623(m).  In contrast, the 2001 VERIP contains no age requirements.  They were removed in favor of the nonage years of service requirement.

Plaintiffs are asking this Court to extend the dictates of 29 U.S.C. § 623(m) to all early retirement programs.  The language of the statute does not require such an interpretation.  This Court finds it instructive that the Equal Employment Opportunity Commission, which exists to assist employers in complying with the law, has not found that the language of the statute should be interpreted as such.  Plaintiffs have not presented any evidence which shows that Defendants were required to include a grandfather provision in the 2001 VERIP.

Ultimately, Plaintiffs have not established the causal connection between their preclusion from electing early retirement under the 2001 VERIP with only 30 years of service and their age under either the disparate treatment or disparate impact theories of age discrimination.  Their failure to show this element of the prima facie case requires that this Court grant summary judgment for Defendants.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| MILTON E. MYERS and | : | |
| JOSEPH MARCHIONE | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 05-5855 |
| | : | |
| DELAWARE COUNTY COMMUNITY | : | |
| COLLEGE and DELAWARE COUNTY | : | |
| COMMUNITY COLLEGE ASSOCIATION | : | |
| OF HIGHER EDUCATION | : | |
| | : | |
| Defendants. | : | |
| | : | |

## **ORDER**

**AND NOW**, this   9th  day of March, 2007, upon consideration of Defendant Delaware County Community College Association for Higher Education's Motion for Summary Judgment (Doc. No. 18), Defendant Delaware County Community College's Motion for Summary Judgment (Doc. No. 19), and all responses thereto, it is hereby **ORDERED** that the Defendants' Motions are **GRANTED**.

BY THE COURT:

/s/ Robert F. Kelly
ROBERT F. KELLY,            Sr. J.